IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

THORNAPPLE ASSOCIATES, INC.,    )
                                )
     Plaintiff,                 )
                                )
          v.                    )     1:14cv767 (JCC/TRJ)
                                )
ALLEN IZADPANAH,                )
                                )
     Defendant,                 )
                                )
          v.                    )
                                )
GREGORY S. COLLETT D/B/A        )
COLLETT LEGAL, *et al.*         )
                                )
     Third-Party Defendants.    )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Third-Party
Defendants Joseph A. Clark ("Clark") and Gregory Collett's
("Collett") Motions to Dismiss the Third-Party Complaint [Dkts.
32, 36].  For the reasons set forth below, the Court will grant
in part and deny in part Defendants' motions.

**I. Background**

This case arises out of a dispute over an expert fee
agreement.  Plaintiff Allen Izadpanah ("Plaintiff" or
"Izadpanah") retained the legal services of Collett Legal and
later Collett Clark LLP to represent him in a National Futures
Association ("NFA") arbitration proceeding (Third-Party Compl.

[Dkt. 21] ¶¶ 12-13.)  As part of that proceeding, Collett Clark

LLP and Izadpanah engaged the expert witness services of

Thornapple Associates, Inc. ("Thornapple") (*Id.* ¶ 7.)  In the

original complaint, Thornapple asserts breach of contract,

account stated, quantum meruit, and unjust enrichment claims

arising out of Izadpanah's alleged non-payment of expert witness

fees.  (*Id.*)  Thornapple originally filed the case in the U.S.

District Court for the District of Maryland, but upon consent of

both parties Judge Theodore D. Chuang transferred the case to

this Court.  (*See* 6/20/14 Order [Dkt. 13].)

       Izadpanah denies liability for Thornapple's fees.

(Third-Party Compl. ¶ 7.)  However, to the extent that he is

found liable, Izadpanah contends that Collett and Clark are

legally responsible for half of the outstanding balance as well

as half of any money already paid to Thornapple.  (*Id.* ¶ 9.)

This purported indemnification agreement arises out of two

documents.  The first is the retainer agreement signed by

Collett on May 8, 2012 and sent to Izadpanah for his signature.[1]

In that agreement, Izadpanah agreed to pay any arbitration

---

[1] According to Izadpanah, Collett Legal is not a distinct legal entity from
Collett and was never registered to conduct business in New York and New
Jersey.  (Third-Party Compl. ¶ 4.)

expenses.[2]   (Third-Party Compl., Ex. A at 2.)   Additionally, the
agreement contained the following language:

> [Collett Legal] anticipates the following primary
> expenses: (1) until roughly three months before any
> hearing, the primary expense is an NFA filing fee of
> approximately $1550; and (2) after roughly three
> months before any hearing, [Collett Legal] will
> discuss with you the anticipated expenses of (i)
> expert witnesses, (ii) hearing fees, and (iii) travel
> expenses to the hearing.

(*Id.*)   The second document that Izadpanah alleges gives rise to
liability is an email sent from Collett to Izadpanah, copying
Clark, sent on May 3, 2012.   (Third-Party Compl., Ex. D, at 1.)
In relevant part, that email states: "As discussed yesterday, as
an addendum to the retainer agreement between Collett Clark LLP
and you, if we do not get you a recovery, we will reimburse you
for 50% of Thornapple's bill."   (*Id.*)

   On the basis of these two documents, Izadpanah asserts
a breach of contract claim against Collett and Clark.[3]   (Third-
Party Compl. ¶¶ 23-28.)   Both defendants have moved to dismiss
the complaint on the basis of lack of personal jurisdiction,
improper venue, and failure to state a claim.   (Clark's Mot. to
Dismiss at 1; Collett's Mot. to Dismiss at 1.)   Having been

---

[2] The Court may consider the retainer agreement because it is incorporated
into the complaint by reference as well as attached to the complaint. *See*
*Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).
[3] The complaint requested attorney fees.  However, Izadpanah consents to
striking this request in the relief section of the complaint. (Pl.'s Opp. to
Collett's Mot. to Dismiss [Dkt. 41] at 5.)  Therefore, the Court will order
it so stricken.

fully briefed and argued, Defendants' motions are now before the
Court.

## II. Analysis

### A. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

Before turning to other issues raised by Defendants,
the Court must first consider whether it has personal
jurisdiction over the Defendants "for lacking this the remainder
of its ruling would be wasted effort." *Willis v. Semmes, Bowen
& Semmes*, 441 F. Supp. 1235, 1238 (E.D. Va. 1977).  Federal
Rules of Civil Procedure 12(b)(2) and 14 permit a third-party
defendant to raise lack of personal jurisdiction as a defense in
a pre-answer motion.  The third-party plaintiff bears the burden
of proving to the court the existence of jurisdiction over the
defendant by a preponderance of the evidence.  *See New
Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d
290, 294 (4th Cir. 2005) (citation omitted).  If there are
disputed factual questions as to the existence of jurisdiction,
the court may hold a separate evidentiary hearing or may defer
ruling pending relevant evidence produced at trial.  *See Combs
v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Long v. Chevron
Corp.*, No. 4:11cv47, 2011 WL 3903066, at *3 (E.D. Va. Sept. 2,
2011).  In the absence of an evidentiary hearing, the burden on
the plaintiff is simply to make a prima facie showing of a

4

sufficient jurisdictional basis.  *New Wellington*, 416 F. 3d at 294.  In determining whether a plaintiff has met this burden, courts "'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'"  *Id.* (quoting *Combs*, 886 F.2d at 676).

Federal courts exercise personal jurisdiction in the manner provided by state law.  *New Wellington*, 416 F.3d at 294. Determining whether personal jurisdiction exists involves two steps: (1) whether the state's long-arm statue authorizes the exercise of jurisdiction and, if so (2) whether the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.  *Eagle Paper Int'l, Inc. v. Expolink, Ltd.* No. CIV.A. 2:07CV160, 2008 WL 170506, at *3 (E.D. Va. Jan. 17, 2008).  In Virginia, "[i]t is manifest that the purpose of Virginia's long-arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause." *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 512 S.E.2d 560, 562 (Va. 1999).  Because Virginia's long-arm statute is intended to extend personal jurisdiction to the outer limits of due process, the constitutional and statutory inquiry merge. *Id.; see also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

There are two types of personal jurisdiction that meet the requirements of due process: specific and general jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985).  In both instances, a non-resident defendant must have sufficient "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

General jurisdiction exists for claims entirely distinct from the defendant's in-state activities when a defendant's activities in the state have been "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.9 (1984).  Here, Izadpanah has not shown that Defendants' Virginia contacts meet this standard such that general jurisdiction would be appropriate.  Clark is a citizen of New Jersey and Collett is a citizen of New York.  (*See* Clark's Mot. to Dismiss Mem., Ex. A [Dkt. 32], Clark Decl. ¶ 1 [hereinafter Clark Decl.]; Collett's Motion to Dismiss Mem., Ex. A [Dkt. 37], Collett Decl. ¶ 1 [hereinafter Collett Decl.].) Defendants own no property in Virginia and do not regularly conduct business here.  (Clark Decl. ¶ 16; Collett Decl. ¶ 10.) Therefore, if personal jurisdiction exists over Defendants, it must be specific jurisdiction.

6

To adequately allege specific jurisdiction, the plaintiff must show that a defendant "purposefully directed his activities at the residents of the forum and the litigation results from alleged injuries that arise out of those activities." *Burger King*, 471 U.S. at 472 (citations omitted) (internal quotation marks omitted).  This test protects a defendant from having to defend himself in a forum where he could not have anticipated being sued.  *Consulting Engineers*, 561 F.3d at 276.  It prevents "jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (citations omitted) (internal quotation marks omitted).

In analyzing the due process requirements for asserting specific jurisdiction, the Fourth Circuit has set out a three-part test in which the Court must consider, in order, "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers*, 561 F.3d at 278 (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). Each factor will be considered in turn.

### 1. Purposeful Availment

"The first prong articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Engineers*, 561 F. 3d at 278.  In evaluating this requirement, courts have considered various nonexclusive factors, including:

> whether the defendant maintains offices or agents in the forum state; whether defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality, and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum.

*Consulting Engineers*, 561 F. 3d at 278 (citations omitted).

Collett and Clark purposefully availed themselves of the privilege of doing business in Virginia.  The original letter of engagement from Collett Legal to Izadpanah was addressed to Izadpanah as president and CEO of ViTel Net LLC and sent to Izadpanah's Virginia business address and business email address.  (Third-Party Compl., Ex. A, at 1.)  Izadpanah was

8

physically present in Virginia when he executed the retainer agreement, which had already been digitally signed by Collett. (Third-Party Compl., Ex. A; Third-Party Pl.'s Opp. [Dkts. 39, 41] at 6.)[4]  The agreement contained an arbitration clause that stated: "If a dispute arises between us relating to our fees, you *may* have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the Chief Administrator of the Courts of New York State[.]"[5]  (Third-Party Compl., Ex. A, at 2) (emphasis added).  Shortly thereafter, in early June 2012 Collett and Clark formed Collett Clark LLP and continued representation of Izadpanah.  (Third-Party Compl. ¶¶ 4, 12; Clark's Mot. to Dismiss Mem. at 6.)  According to Defendants, Collett Legal "later became" Collett Clark LLP.  (Clark's Mot. to Dismiss Mem. at 6.)  Collett Clark LLP initiated the NFA arbitration on July 23, 2012.  (Third-Party Compl. ¶ 13.)

---

[4] Izadpanah makes substantially similar arguments in his opposition to both motions.  Therefore, unless otherwise noted, "Pl.'s Opp." refers to his opposition against both Collett and Clark's motions to dismiss.

[5] The Court takes judicial notice of Part 137 of the Rules of the Chief Administrator of the Courts of New York State.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (stating that on a motion to dismiss, courts may properly consider matters of public record).  Part 137 establishes a Fee Dispute Resolution Process ("FDPR") to resolve fee disputes between lawyers practicing in New York and clients.  There are three ways in which this program can be triggered: (1) the lawyer mails the client a notice of the client's right to arbitrate; (2) the client initiates arbitration; or (3) the lawyer and the client previously agreed in writing to use the FDPR.  *See* Fee Dispute Brochure, *available at* http://www.nycourts.gov/admin/feedispute/.  Situations (1) and (2) are not applicable here.  Based on the language of the Collett Legal retainer agreement, FDPR is not mandatory.  Therefore, the fact that Izadpanah was advised of his right to potentially pursue arbitration in New York does not operate as a binding arbitration clause, nor is it a relevant forum-selection clause for the purposes of determining personal jurisdiction in Virginia.

Izadpanah communicated with Defendants through his ViTel Net email address and maintained records relating to this action in his Virginia business office. (Pl.'s Opp. at 6.) He also exchanged several phone calls with Defendants while in Virginia. (Pl.'s Opp. at 10.) In preparation for the arbitration, Collett attended a pre-hearing mediation in Tysons Corner, Virginia.[6] (Collett Decl. ¶ 8.) He also met with Izadpanah three times in person: once in Virginia at the ViTel Net office, once in Washington, D.C., and once the day before the start of arbitration at Izadpanah's Maryland home. (*Id.*) Clark was also present at the meeting at Izadpanah's home and met with Izadpanah in-person on three additional occasions: two meetings in Washington, D.C. and one meeting at the ViTel Net office in Virginia. (Clark Decl. ¶ 10.) Both Clark and Collett were present at the Virginia arbitration hearing, which took place over nine days throughout three months. (Clark's Mot. to Dismiss Mem. at 3; Collett Mot. to Dismiss Mem. at 10.) The arbitration was resolved against Izadpanah on September 12, 2013, over a year after he commenced the action. (Third-Party Compl. ¶ 20.) Thus, Izadpanah has made a prima facie showing that there was a significant business relationship between the parties that involved a long-term commitment from Defendants,

---

[6] Clark notes that the mediation session was held in Virginia "to accommodate the parties." (Clark's Reply at 4.)

including coming to Virginia to prepare for and attend the arbitration.

Collett maintains that the location for the arbitration hearing was set by the NFA, and, in fact, Izadpanah had requested the arbitration to take place in Florida, where he now lives, or Washington, D.C.  (Collett Decl. ¶ 5.) Furthermore, both Collett and Clark assert that the contract at issue is a result of Izadpanah's unilateral activity.  (Clark Reply [Dkt. 42] at 4; Collett Reply [Dkt. 43] at 3.)  These arguments lack merit.  First, in agreeing to represent Izadpanah, Collett and Clark assumed the risk that the arbitration would require them to fulfill their contract obligations in an unknown forum.  It is not a defense for Collett or Clark to claim that at the time they were initially hired they did not know the arbitration hearing would be held in Virginia.  Furthermore, part performance in Virginia of the contract to provide legal services to Izadpanah is enough to confer jurisdiction.  *See Cooper Materials Handling, Inc. v. Tegeler*, No. 1:14cv956 (JCC/TRJ), 2014 WL 4748915, at *6 (Sept. 24, 2014); *Prod. Grp. Int'l v. Goldman*, 337 F. Supp. 2d 788, 795 (E.D. Va. 2004); *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 512 S.E.2d 560, 563 (Va. 1999); *Prolinks, Inc. v. Horizon Organic Dairy, Inc.*, No. 193616, 2001 WL 1829993, at *2-3 (Va. Cir. Ct. July 9, 2001).

Second, contrary to their assertions, neither defendant was a passive recipient of Izadpanah's overtures.[7] Izadpanah did not unilaterally decide to have Defendants represent him; Defendants had to agree in order to form a contract.  *See Allfirst Bank v. Progress Rail Serv. Corp.*, 521 Fed. App'x 122, 127 (4th Cir. 2013) ("The creation of a contract requires an offer by one party and acceptance by the other party.") (citation omitted) (internal quotation marks omitted). Clark and Collett performed the contract through in-person meetings, phone calls, and emails with Izadpanah in Virginia. Therefore, Defendants purposefully availed themselves of doing business in Virginia.

## 2. "Arising From"

This prong requires the defendant's contacts with the forum state to form the basis for the suit.  *See Burger King*, 471 U.S. at 472.  As relevant here, Virginia's long-arm statute

---

[7] In his reply, Clark cites *Processing Research, Inc. v. Larson*, 686 F. Supp. 119, 121-22 (E.D. Va. 1988) and *Unidyne Corp. v. Aerolineas Argentinas, et al.*, 590 F. Supp. 391, 396 (E.D. Va. 1984) as support for the proposition that his contact with Virginia was the "product of external factors, not purposeful activity."  (Clark's Reply [Dkt. 41] at 5.)  These cases are distinguishable.  In *Processing Research*, the Virginia plaintiff bought an airplane through the Colorado defendant.  686 F. Supp. at 120-21.  The defendant had never set foot in Virginia, insured that the contract was formed in Colorado and governed by its laws, and delivered the airplane in Colorado.  *Id.* at 123.  Those facts led the court to hold that defendant had deliberately avoided Virginia and thus did not have sufficient minimum contacts in the state.  *Id.*  In *Unidyne*, neither the defendant corporation nor its agents had ever physically entered Virginia to transact any business. *Unidyne*, 590 F. Supp. at 396.  Here, Clark has been to Virginia to attend meetings and the arbitration in furtherance of his representation of Izadpanah.  Additionally, there is no contract language similar to *Processing Research* that would lead the Court to believe Clark intended to avoid personal jurisdiction in Virginia.

permits Virginia courts to exercise personal jurisdiction over an individual where the cause of action "arises from" the person's:

> (1) transacting any business in this Commonwealth;
>
> (2) contracting to supply services or things in this Commonwealth;
>
> (3) causing tortious injury by an act or omission in this Commonwealth;
>
> (4) causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth[.]

Va. Code. Ann. § 8.01-328.1(A)(1)-(4). Izadpanah argues that all four sections apply here. (Pl.'s Opp. at 11-12.) However, since Izadpanah's claim is for breach of contract, it is appropriate to consider only sections (1) and (2). *See Cent. Virginia Aviation, Inc. v. N. Am. Flight Servs., Inc.*, No. 3:14cv265-HEH, 2014 WL 2002247, at *3 (E.D. Va. May 15, 2014) (considering whether sections (3) and (4) of the Virginia long-arm statute confer jurisdiction where plaintiff had alleged tortious interference in addition to breach of contract).

Virginia is a single act state, requiring only one transaction in Virginia to confer jurisdiction on its courts. *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 180 S.E.2d 664, 667

13

(Va. 1971).  "A single act of business can confer jurisdiction provided that it is significant and demonstrates purposeful activity in Virginia."  *Production Group*, 337 F. Supp. 2d at 793; *see also English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990); *Dollar Tree Stores, Inc. v. Mountain Pac. Realty, LLC*, Civil No. 12-1130, 2013 WL 8216346, at *2 (Va. Cir. Ct. Jan. 29, 2013).  When a contract between the parties gives rise to a defendant's business in Virginia, courts look at: "(i) where any contracting occurred, and where the negotiations took place; (ii) who initiated the contact; (iii) the extent of the communications, both telephonic and written, between the parties; and (iv) where the obligations of the parties to the contract were to be performed."  *Dollar Tree Stores*, 2013 WL 8216346, at *2.

In this case, the parties' relationship arises from the May 8, 2012 retainer agreement and the alleged email addendum to that agreement on May 3, 2013.  As noted earlier, Izadpanah consummated the retainer agreement by signing it in Virginia.  (Pl.'s Opp. at 10.)  He received the email addendum while he was in Virginia.  (*Id.*)  There were numerous phone calls and emails "directed to Izadpanah in Virginia."  (*Id.*)  The arbitration took place in McLean, Virginia.  The alleged addendum notes that Collett Clark LLP would pay for half of Thornapple's fees should Izadpanah lose the arbitration, thus

14

contemplating that performance of this part of the contract would take place from Collett Clark LLP's offices in New Jersey. But one of Defendants' obligations under the contract was to represent Izadpanah in the arbitration hearing, which took place in Virginia.  The Fourth Circuit has held such representation is a sufficient business transaction giving rise to personal jurisdiction. *Willis*, 441 F. Supp. at 1239 (finding personal jurisdiction in Virginia where Maryland law firm represented Virginia plaintiff in Virginia bankruptcy action through local counsel).

Personal jurisdiction over Defendants is also proper under Va. Code. Ann. § 8.01-328.1(A)(2), "contracting to supply services or things."   In addition to finding jurisdiction under what is now Va. Code. Ann. § 8.01-328.1(A)(1), the *Willis* Court found that in representing the plaintiff in Virginia, the law firm had contracted to supply services in the Commonwealth.  441 F. Supp. at 1239.  In so holding, the *Willis* Court stated: "Although the contract was made outside the state and did not specifically require performance in Virginia, jurisdiction may still be based on this provision since performance did actually occur within this state." *Id.* at 1240.  Similarly, though the contract between Izadpanah and Defendants did not contemplate where the representation would take place, jurisdiction is proper because ultimately Defendants' performance of the

15

contract took place in Virginia.  Therefore, representation of

Izadpanah in a proceeding in Virginia is sufficient to establish

jurisdiction under both the "transacting business" and

"contracting to supply services or things" prongs of Virginia's

long-arm statute.

### 3. Constitutionally Reasonable

Finally, a court must consider whether the exercise of

personal jurisdiction is constitutionally reasonable.  A court

may consider additional factors to ensure the appropriateness of

the forum.  Such factors include:

> (1) the burden on the defendant of
> litigating in the forum; (2) the interest of
> the forum state in adjudicating the dispute;
> (3) the plaintiff's interest in obtaining
> convenient and effective relief; (4) the
> shared interest of the states in obtaining
> efficient resolution of disputes; and (5)
> the interests of the states in furthering
> substantive social policies.

*Consulting Engineers*, 561 F.3d at 279.  Considering these

factors, it is constitutionally reasonable for Defendants to

litigate in Virginia.  Though Clark and Collett are New Jersey

citizens, the balance of these factors promote resolving this

issue in Virginia.  Joining Defendants as third-party defendants

promotes efficient resolution of the underlying dispute, thus

serving the purposes of third-party practice under Rule 14.  *See*

6 Charles Alan Wright, Arthur Miller, & Mary Kay Kane, <u>Federal</u>

<u>Practice & Procedure</u>, § 1442 (3d ed. 2008) ("In short, Rule 14

is intended to provide a mechanism for disposing of multiple claims arising from a single set of facts in one action expeditiously and economically.").

In light of all three *Consulting Engineers* factors, this Court finds it appropriate to exercise personal jurisdiction over the Defendants.  Therefore, the Court will deny Defendants' motions to dismiss for lack of personal jurisdiction.

**B. Rule 12(b)(3) Motion to Dismiss for Improper Venue**

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to raise improper venue in a pre-answer motion. Defendants argue that venue is improper under 28 U.S.C. § 1391(b)(2), while Izadpanah claims the doctrine of ancillary venue precludes this challenge.  (Clark's Mot. to Dismiss Mem. at 9; Collett Mot. to Dismiss Mem. at 13; Pl.'s Opp. at 14-18.) Defendants cite *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513 (E.D. Va. 2009), as support for the proposition that the doctrine of ancillary venue does not apply where venue in the original action was the product of an agreement between the original plaintiff and the defendant/third-party plaintiff. (Collett's Mot. to Dismiss Mem. at 9; Clark's Reply at 5.) However, that case does not address ancillary venue and thus is irrelevant to the analysis here.

17

As an initial matter, this action could have originally been brought in the Eastern District of Virginia. The change of venue statute, 28 U.S.C. § 1404, allows a transfer of venue "to any other district or division where it might have been brought or to any district or division to which all parties have consented."[8]  For purposes of laying venue, a civil action may be brought "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"  28 U.S.C. § 1391(b)(2).  That requirement is met here, as Thornapple provided services to Izadpanah in connection with and at the NFA arbitration that took place in Tysons Corner, Virginia.  (Izadpanah's Mot. to Dismiss Mem. [Dkt. 8] at 6.)  Since the parties agreed to transfer, Judge Chuang did not have occasion to consider whether venue could lie in this district.  (*See* 6/20/2014 Order.)  Therefore, whether the original parties agreed to venue is irrelevant to the application of the doctrine of ancillary venue because the case is properly in this district anyway.

"The doctrine of ancillary venue simply posits that if venue is proper for the original action, an independent basis of venue for third-party claims is not required."  *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824,

---

[8] The parties' joint stipulation to transfer venue [Dkt. 12] notes that the case could have been brought in the Eastern District of Virginia.

828 (E.D. Va. 2004); *see also* 6 Wright, Miller, & Kane § 1445
("[T]he statutory venue limitations have no application to Rule
14 claims even if they would require the third-party action to
be heard in another district had it been brought as an
independent action."). Otherwise, "[t]he spirit and purpose of
Rule 14 to a great extent would be frustrated if the venue
statutes had to be applied to third-party proceedings." *Morrell
v. United Air Lines Transp. Corp.*, 29 F. Supp. 757, 759
(S.D.N.Y. 1939). Accordingly, third-party defendants have no
standing to raise a defense that venue is improper. *One Beacon*,
312 F. Supp. 2d at 829; *see also R.E. Linder Steel Erection,* 88
F.R.D. 629, 633 (D. Md. 1980) ("That is, the party against whom
[Rule 14] claims are brought may raise no venue defense, because
venue statutes apply only to an original action.").

It is clear that the doctrine of ancillary venue
applies in this case. Therefore, Defendants have no standing to
challenge venue, and the Court will deny their motion to dismiss
for improper venue under Rule 12(b)(3).

## C. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Finally, the Court turns to whether Izadpanah has
stated a claim for relief under Federal Rule of Civil Procedure
12(b)(6). "A motion to dismiss under Rule 12(b)(6) tests the
sufficiency of a complaint[.]" *Republican Party of N.C. v.*

19

*Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Supreme Court has stated that in order "[t]o survive a motion to dismiss, a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The issue in resolving such a motion is not whether the non-movant will ultimately prevail, but whether the non-movant is entitled to offer evidence to support his or her claims.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citations omitted). While legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations. *Id.* Based upon these allegations, the court will determine whether the plaintiff's pleadings plausibly give rise to an entitlement to relief. *Id.* To survive a motion to dismiss, a plaintiff's complaint must demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678;

20

*Twombly*, 550 U.S. at 555.  Legal conclusions couched as factual allegations are not sufficient. *Twombly*, 550 U.S. at 555. Hence, a pleading that offers only "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.  Nor will a complaint that tenders mere "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.

Moreover, the plaintiff does not have to show a likelihood of success on the merits.  Rather, the complaint must merely allege – directly or indirectly – each element of a "viable legal theory." *Twombly*, 550 U.S. at 562-63.  At the motion to dismiss stage, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true.  *Iqbal*, 556 U.S. at 678.

Izadpanah's sole claim against Defendants is for breach of contract.  Contract law requires a legally enforceable obligation of a defendant to a plaintiff. *Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004); *Weichert Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992).[9]  Defendants argue that no such obligation incurs to them as individuals, as Collett Clark LLP is the party that may have an enforceable obligation to Izadpanah.  (Clark

---

[9] For the purpose of this analysis, it is not necessary to decide whether Virginia law or New Jersey law governs the contract here, as both jurisdictions require this element as a prerequisite to finding an enforceable contract.

Mot. to Dismiss Mem. at 12; Collett Mot. to Dismiss Mem. at 3.)
In opposition, Izadpanah states "every member of a partnership
is jointly and severally liable for torts committed by other
members of the partnership acting within the scope of the firm's
business." (Pl.'s Opp. to Clark's Mot. to Dismiss Mem. at 15-17;
Pl.'s Opp. to Collett's Mot. to Dismiss at 4-5.)

        Izadpanah has not alleged any tort claims.  Therefore,
his claim that partners are liable for their co-partner's torts
is inapplicable here.  Nevertheless, the Court will look to New
Jersey partnership law to determine whether Defendants as
individuals can be held personally liable on this contract.  New
Jersey Code § 41:1A-18 states, in relevant part:

> An obligation of a partnership incurred
> while the partnership is a limited liability
> partnership, whether arising in contract,
> tort, or otherwise, is *solely the obligation
> of the partnership. A partner is not
> personally liable*, directly or indirectly,
> by way of contribution or otherwise, for
> such an obligation solely by reason of being
> or so acting as a partner.

(emphasis added).  Collett Clark LLP was a limited liability
partnership organized under the laws of New Jersey.  (Third-
Party Compl. ¶ 4.)  During Izadpanah's representation, the firm
was a limited liability partnership.  Therefore, under New
Jersey partnership law, Collett and Clark cannot be personally
liable for any alleged breach of contract by the partnership.
The correct party to sue is Collett Clark LLP, not Collett and

Clark individually, as individuals in a limited liability partnership are not personally liable for the debts of the partnership.

Notwithstanding, Izadpanah argues that Collett remains individually liable.  The original retainer agreement was between Izadpanah and Collett Legal.  Izadpanah alleges that Collett Legal was never registered to do business in New Jersey, and therefore the alleged addendum to the agreement modified Collett's individual responsibility under the original fee agreement.  Again, Izadpanah cites no case law in support of this proposition.  However, the Court notes that the original contract with Collett Legal left the determination of expert fees to be determined at a later date.  By the time that determination was made, Collett Clark LLP had undertaken Izadpanah's representation.  Collett Clark LLP therefore entered into the alleged addendum, not Collett individually.  Therefore, Collett cannot be individually liable.

Additionally, Izadpanah's complaint alleges that Collett and Clark are "successors in interest or otherwise liable for the obligations" of Collett Clark LLP.  (Third-Party Compl. ¶¶ 2, 3.)  However, his opposition to their motions to dismiss makes no mention of this theory.  Nevertheless, it does not apply here.  The successor-in-interest theory states that, subject to four exceptions, "where one company sells or

23

otherwise transfers all of its assets to another company, the transferee of those assets is not ordinarily liable for the debts of the transferor company, including those arising out of the transferor's tortious conduct." *Woodrick v. Jack J. Burke Real Estate*, 703 A.2d 306, 312 (N.J. Super. Ct. App. Div. 1997). Collett Clark LLP was dissolved on December 31, 2013. (Third-Party Compl. ¶ 4.)  No asset sale is alleged in the complaint, rendering the successor-in-interest doctrine irrelevant here.

The Court declines to consider additional arguments raised by the parties relating to the merits of the breach of contract claim in light of its holding that Collett and Clark are not the proper parties.  This does not preclude either party from raising these issues at a later stage in the litigation.

### III. Conclusion

For the reasons set forth above, the Court will dismiss the action without prejudice for failing to name the proper party.  An appropriate order will follow.

|  |  |
|---|---|
| September 30, 2014 | /s/ |
| Alexandria, Virginia | James C. Cacheris |
|  | UNITED STATES DISTRICT COURT JUDGE |

24